**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **JANNAH ALAOUI,** | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **v.** | § | **21-2549** |
| | § | |
| **UNIVERSITY OF TEXAS** | § | **JURY** |
| **HEALTH SCIENCE CENTER AT** | § | |
| **HOUSTON,** | | |
| **Defendant.** | | |

---

**PLAINTIFF JANNAH ALAOUI'S ORIGINAL COMPLAINT AND JURY DEMAND**

---

TO THE HONORABLE DISTRICT COURT JUDGE:

Plaintiff Jannah Alaoui sues Defendant University of Texas Health Science Center at Houston for disability discrimination and retaliation in violation of the Americans with Disabilities Act, as amended, as well as for retaliation for requesting and taking protected leave under the Family and Medical Leave Act.  In support, she shows the following:

### I.   PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Jannah Alaoui is an individual who resides in Collin County, Texas.

2. Defendant, University of Texas Health Science Center at Houston, is a governmental subdivision and state entity operated as part of the University of Texas System.  Defendant may be served through its President, Giuseppe N. Colasurdo, at 7000 Fannin Street, Ste. 1707, Houston, Texas 77030.

3. Personal jurisdiction over Defendant is appropriate because it is a state entity, at all times relevant to Plaintiff's claims it did business in the state of Texas, and all of the events

giving rise to this lawsuit occurred in Harris County in the state of Texas.  Further, an exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

4.      Defendant is an employer within the meaning of the Americans with Disabilities Act, as amended, and the Family and Medical Leave Act.

5.      This Court has jurisdiction to hear the merits of the claims under 28 U.S.C. § 1331.

6.      Venue is proper in the district and division under 28 U.S.C. § 1391(b).

## II.   FACTUAL BACKGROUND

7.      Jannah Alaoui first began working for University of Texas Health Science Center at Houston ("UT Health") on August 4, 2015, as a Certified Nurse Midwife.

8.      Ms. Alaoui was contracted out by UT Health to the Spring Branch Community Health Center, although she would also occasionally do work for other locations such as the Harris Health Clinic or LBJ Hospital.

9.      Ms. Alaoui always gave UT Health, the clinics, and their patients her best efforts and had intended to work for UT Health for the rest of her career.

10.     Ms. Alaoui's supervisor was a UT Health employee, Director of Midlevels Merita O'Sullivan.

11.     Prior to the events below, Ms. Alaoui had no disciplinary history whatsoever.

12.     Ms. Alaoui consistently received annual review ratings of 4 out of 5.

13.     In 2019, Ms. Alaoui was diagnosed with ankylosing spondylitis, chronic inflammation of the ligaments of her spine.

14.     This condition causes chronic pain (leading Ms. Alaoui to need to take pain medication) and fatigue, and can lead to deformities if untreated.

15.     To treat her condition, Ms. Alaoui also began to take immunosuppressant medication.

16.     Ms. Alauoi informed Ms. O'Sullivan that she had an autoimmune condition by early 2019 because she had to take multiple days off for treatment.

17.     Ms. Alaoui has also suffered from asthma from birth, which affects her ability to breath.

18.     UT Health was aware of Ms. Alaoui's asthma from the time of hiring because she used her inhaler at work and had to be treated several times for asthma-related pneumonia.

19.     By March 2020, as COVID-19 grew to a nationwide pandemic, Ms. Alaoui became increasingly worried about her safety and health because her disabilities leave her severely immunocompromised and at a much greater risk of death if she contracted COVID-19.

20.     Around this time, the president of UT Health sent out a mass email to all employees letting them know they could request accommodations related to COVID-19.

21.     Accordingly, Ms. Alaoui made an accommodation request to both the UT Health diversity department and Ms. O'Sullivan.

22.     Specifically, Ms. Alaoui asked to be able to work from home and also to practice telemedicine.

23.     Ms. Alaoui can perform the essential functions of her job while working from home.

24.     The only duties Ms. Alaoui had ever performed that she would not be able to do from home were performing physicals of pregnant women and delivering babies.

25.     However, Ms. Alaoui had not been scheduled to deliver any babies, or even to work with the hospital's labor and delivery unit, since 2018.

26.     Additionally, Ms. Alaoui was one of three Certified Nurse Midwives who did work at Spring Branch, and the other two could perform physical exams with Ms. Alaoui performing supplemental evaluations over telemedicine.

27.    Despite all of the above indications that working from home was clearly a reasonable accommodation, UT Health was reluctant to accommodate Ms. Alaoui.

28.    Ms. Alaoui provided UT Health with all necessary medical documentation of her disabilities and need for accommodation.

29.    Ms. Alaoui regularly followed up with UT Health about her accommodation request after this, but heard nothing.

30.    So, at that time, Ms. Alaoui told Ms. O'Sullivan and Deana Moylan with the diversity department that she was concerned the delays in accommodating her were disability discrimination.

31.    After three weeks of discussions, Ms. O'Sullivan and the diversity department finally approved Ms. Alaoui's accommodation in or around early April 2020, and she began to work from home.

32.    Ms. Alaoui was told the accommodation would be temporary for the duration of the pandemic, but was never given any end date for her accommodation.

33.    Ms. Alaoui thereafter worked from home without issue until the end of May 2020.

34.    On or about May 28, 2020, Tonya Knighton—who Ms. Alaoui later learned was assistant to the head of the OB/GYN department, Kevin Merssman—called Ms. Alaoui to tell her that Ms. O'Sullivan was complaining that Ms. Alaoui was not working.

35.    According to Ms. Knighton, the department was going to cut Ms. Alaoui's paycheck by some amount or stop paying her entirely.

36.    Ms. Knighton also claimed that Ms. Alaoui's accommodations had expired on May 6, 2020, which is not something anyone had ever told Ms. Alaoui before this point.

37.    Ms. Knighton claimed she was going to start an HR investigation against Ms. Alaoui right

away.

38.     At no point before this conversation had Ms. O'Sullivan ever accused Ms. Alaoui of not working.

39.     Indeed, Ms. Alaoui had worked as she normally would while working from home.

40.     Ms. Alaoui had texted with Ms. O'Sullivan as needed over the course of May 2020, and Ms. O'Sullivan had never raised any performance concerns.

41.     Indeed, earlier in May 2020, the Spring Branch Community Health Center locked Ms. Alaoui out of its computer systems.

42.     At the time, Ms. Alaoui had contacted Ms. O'Sullivan to ask to restore her access so she could keep doing work for that clinic.

43.     However, Ms. Alaoui's computer access for that clinic was never restored, even though she explained to Ms. O'Sullivan that she needed that access to work.

44.     Instead, Ms. O'Sullivan told Ms. Alaoui to just work on her board re-certification, which she then did.

45.     Ms. Knighton never contacted Ms. Alaoui about her paycheck or performance again after May 28, 2020.

46.     After that call with Ms. Knighton, however, in late May or early June 2020 Ms. Alaoui contacted senior administrative manager Nancy Vicinaza, several diversity department employees, and Ms. O'Sullivan about Ms. Knighton's call.

47.     Ms. Alaoui specifically told all of them she felt ending her accommodation like this was disability discrimination.

48.     Ms. Vicinaza responded about the status of Ms. Alaoui's paycheck, and she confirmed it was not going to be cut.

49.     However, no one else even responded, and Ms. Vicinaza completely ignored Ms. Alaoui's concerns about disability discrimination.

50.     On or about June 10, 2020, Ms. Alaoui learned that Spring Branch Community Health Center was ending its contract with UT Health.

51.     After that, Ms. Alaoui asked Ms. O'Sullivan and Ms. Vicinaza, as well as Dr. Merssman, about how this would affect her.

52.     On or shortly after June 10, 2020, Ms. O'Sullivan told Ms. Alaoui that she (Ms. O'Sullivan) would look for another site for Ms. Alaoui.

53.     After this, Ms. Alaoui repeatedly asked Ms. O'Sullivan if she had found a new position for Ms. Alaoui.

54.     However, Ms. O'Sullivan never gave Ms. Alaoui any further substantive updates on that search.

55.     After Ms. Alaoui completed her re-certification in or around June 2020, she asked Ms. O'Sullivan what else she should be doing next.

56.     Ms. O'Sullivan did not respond.

57.     Ms. Alaoui also asked IT, as well as Ms. O'Sullivan, Ms. Moylan, and Ms. Vincinaza about the clinics' telemedicine capacities several times between when she asked for an accommodation and June 2020.

58.     However, no one would give Ms. Alaoui any definite answers about when or how she could provide telemedicine care.

**59.     This was despite the fact that <u>Ms. Alaoui had worked from home without issue only a few months before</u>.**

60.     On or about June 16, 2020, because no one would respond to Ms. Alaoui about work or

---

where she would work with the Spring Branch contract ending, and because Ms. Alaoui was afraid that UT Health was looking for a pretext to terminate her, her doctor reluctantly said Ms. Alaoui could try to return to work in person.

61.    Ms. Alaoui returned to work in person at Spring Branch for around three days, but her autoimmune medication caused severe abdominal pain that required her to go to an urgent care facility.

62.    On or about June 19, 2020, Ms. Alaoui let Ms. O'Sullivan and Ms. Moylan know via email that because of her symptoms she needed to return to working from home.

63.    Because Ms. Alaoui needed surgery for digestive issues, she told Ms. O'Sullivan as well as Ms. Moylan that she likely would need to take FMLA in the near future.

64.    They did not respond to those emails.

65.    On or about June 26, 2020, Ms. Alaoui requested FMLA for surgery, and it was approved for six weeks for the surgery and recovery.

66.    Ms. Alaoui then went out on FMLA and had surgery on July 9, 2020.

67.    The same day as Ms. Alaoui's surgery, Dr. Pamela Berens, CMO of the UT Health's OB/GYN department, called and left Ms. Alaoui a voicemail.

68.    Ms. Alaoui then asked Dr. Berens to communicate with her in writing.

69.    So, the next day, July 10, 2020, Ms. Alaoui was sent documents saying her position was being eliminated as part of a reduction in force due to the loss of the Spring Branch contract.

70.    However, the other two Certified Nurse Midwives who performed work at Spring Branch were not laid off.

71.    Those individuals continued to work at the Harris Health Clinic.

72.    Because Ms. Alaoui was also credentialed with the Harris Health Clinic system, UT Health

could have moved her to work with any of their clinics as well.

73.     Instead, Ms. Alaoui was the only Certified Nurse Midwife (out of a total of five) in the Houston area to be terminated at this time.

74.     Indeed, UT Health proactively reached out to the only other employee contracted at Spring Branch who was supposedly laid off with Ms. Alaoui, Nurse Practitioner Terri Taylor, and shortly thereafter offered Ms. Taylor a new position.

75.     Ms. Taylor did not have to perform any kind of job search to get this new position.

76.     Ms. Alaoui was never offered her job back, or any other position.

77.     At the time Ms. Alaoui was terminated she was still out on FMLA leave, which was not set to end until July 29, 2020.

78.     On July 10, 2020, Ms. Alaoui emailed Ms. Moylan as well as Melissa Silva with HR to report that her termination was because of her disability and FMLA leave.

79.     Ms. Moylan told Ms. Alaoui to bring this complaint to UT Health's HR and legal departments, which Ms. Alaoui then did.

80.     Ms. Alaoui's last official day was July 24, 2020.

81.     Around late August 2020, UT Health attorney Stephen Arong told Ms. Alaoui that UT Health would investigate her report of discrimination.

82.     However, or about September 25, 2020, Ms. Alaoui received a letter from Mr. Arong claiming without explanation that UT Health had investigated but was "unable to substantiate" her claims of disability discrimination and violations of the FMLA, and that UT Health would take no further action.

83.     Ms. Alaoui timely dual-filed charges of discrimination against the Defendant.

84.     Ms. Alaoui files this complaint within 90 days of receiving notice of her right to sue from

the EEOC.

85.    All conditions precedent to filing suit have been satisfied for fulfilled.

### III.    DISCRIMINATION IN VIOLATION OF THE ADAAA

86.    Ms. Alaoui re-alleges and incorporates the allegations contained in the above paragraphs 1-85 as if fully stated herein.

87.    UT Health's actions, including but not limited to its decision to terminate Ms. Alaoui, its failure to reasonably accommodate Ms. Alaoui, and its later interference with her accommodations, were undertaken because of her disabilities.  These actions constitute violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.*, as amended ("ADAAA").

88.    As a result of UT Health's unlawful discrimination, Ms. Alaoui has suffered and expects to suffer pecuniary losses, including but not limited to lost wages and other benefits associated with her employment.

89.    As a result of UT Health's discrimination, Ms. Alaoui has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

90.    To redress the injuries sustained by Ms. Alaoui on account of UT Health's discriminatory actions, she has retained the undersigned counsel to represent her in this action.  She therefore seeks recovery of reasonable attorneys' fees, experts' fees, and costs.

91.    Additionally, Ms. Alaoui seeks any and all equitable relief necessary to return her to the position that she would have been in but for UT Health's unlawful discrimination.

### IV.    RETALIATION IN VIOLATION OF THE ADAAA

92.    Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs 1-

85 as if fully stated herein.

93.    Defendant's actions as described herein constitute unlawful retaliation on the basis of Plaintiff's protected activities of seeking reasonable accommodations and complaining of discrimination. These actions constitute violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.*, as amended ("ADAAA").

94.    As a result of UT Health's unlawful discrimination, Ms. Alaoui has suffered and expects to suffer pecuniary losses, including but not limited to lost wages and other benefits associated with her employment.

95.    As a result of UT Health's discrimination, Ms. Alaoui has suffered non-pecuniary losses including, but not limited to, emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

96.    To redress the injuries sustained by Ms. Alaoui on account of UT Health's discriminatory actions, she has retained the undersigned counsel to represent her in this action. She therefore seeks recovery of reasonable attorneys' fees, experts' fees, and costs.

97.    Additionally, Ms. Alaoui seeks any and all equitable relief necessary to return her to the position that she would have been in but for UT Health's unlawful retaliation.

## V.   RETALIATION IN VIOLATION OF THE FMLA

98.    Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

99.    UT Health's actions constitute unlawful retaliation on the basis of Ms. Alaoui's protected activity of applying for and taking FMLA leave, in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*.

100.   The employment practices complained of above were intentional.

101.   UT Health subjected Ms. Alaoui to adverse employment actions because of her engagement in protected activities, including terminating her employment.

102.   Because of the actions of UT Health, Ms. Alaoui seeks injunctive relief as appropriate, including reinstatement.

## VI.  JURY DEMAND

103.   Plaintiff hereby makes a demand for a trial by jury on all issues, claims, and defenses in this action.

## VII.  PRAYER

104.   WHEREFORE, Plaintiff Jannah Alaoui respectfully requests that the above-named Defendant be cited to appear in this matter and that, after jury trial by proof, she be awarded:

A.   Back pay, including but not limited to lost wages (including salary and commissions) and other employment benefits;

B.   Reinstatement to Plaintiff's position of employment, equivalent position of employment, or the position of employment Plaintiff would have enjoyed but for the discrimination, retaliation, and other illegal acts;

C.   In the event that reinstatement is not feasible, front pay with respect to all pay and benefits Plaintiff would have received;

D.   Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

E.   Actual damages;

F.  Judgment against Defendant for Plaintiff's reasonable attorneys' and experts' fees, and costs of suit;

G.  Prejudgment and post-judgment interest as allowed by law; and

H.  Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this Court may deem proper.

Respectfully submitted,

By: */s/ Julie L. St. John*

Julie L. St. John *(attorney-in-charge)*
Texas Bar No. 24106460
S.D. Texas Bar No. 3139258
jstjohn@wiley-wheeler.com

WILEY WHEELER, P.C.
1651 Richmond Ave.
Houston, Texas 77006
Telephone: (713) 337-1333
Facsimile: (713) 337-1334

Robert J. Wiley
Texas Bar No. 24013750
S.D. Texas Bar No. 596499
*Board Certified Specialist, Texas Board of Legal Specialization, Labor and Employment Law*

Austin P. Campbell
Texas Bar No. 24103768
(*Pro Hac Vice* admission forthcoming)
acampbell@robwiley.com

LAW OFFICE OF ROB WILEY, P.C.
2613 Thomas Avenue
Dallas, Texas 75204
Telephone: (214) 528-6500
Facsimile: (214) 528-6511

ATTORNEYS FOR PLAINTIFF